## NAGELSPACH *v.* SHAW.

1. VENDOR AND PURCHASER — BONA FIDE PURCHASER — LESSEE IN POSSESSION—NOTICE TO PURCHASER.

Where a father, having no family, occupies land of which he is the owner in fee simple, with his son and family, the son having no claim of record, the presumption is that the possession is that of the father, and the occupancy of the son with the father is not notice to a purchaser from the father of a claim by the son of a life lease from the father.

2. ESTOPPEL—CLAIM AS LESSEE—FAILURE TO ASSERT.

Where a son, occupying with his father land belonging to the father, when asked by a prospective purchaser if he had any claim, answered that he had not, and subsequently attorned to the purchaser, he cannot, when summarily proceeded

against by the purchaser to obtain possession, set up a claim that he had a life lease from his father and is entitled to possession thereunder.

Error to Wayne; Brooke, J. Submitted October 10, 1906. (Docket No. 49.) Decided December 3, 1906. Rehearing denied April 2, 1907.

Summary proceedings by Ernest W. Nagelspach against John Shaw for the possession of certain real estate. There was judgment for complainant, and defendant brings error. Affirmed.

This is a summary proceeding, brought under the statute, to recover possession of a house and lot in the city of Detroit. James Shaw, the father of defendant, had owned them for over 30 years, and occupied them as his homestead. He was 74 years old. His wife was dead. Defendant, John, with his wife and children, lived and occupied the house with him. The title of record was in the father. The father, intending to leave Detroit, sold and conveyed the land by proper deed to the complainant in October, 1904. James represented to complainant that his title was clear, and delivered to him an abstract of title. After causing the same to be properly examined, and after visiting the premises, he purchased, paid for them, and received his deed. James took the complainant through the house; the defendant and his wife being there at the time. Complainant knew nothing about the arrangements under which defendant with his family occupied the premises with the father. Before paying for the premises, complainant went to the house, and asked defendant whether he had any claim upon them, to which defendant replied that he had not. Defendant told complainant it was satisfactory for him to move in, saying:

"I will be a good deal happier to pay $10 or $15 a month rent, than to live here on his premises, and to have him over my charge. All I want you to do is to give me 30 days."

Complainant further testified that defendant promised to assist him in moving. A day or two after that James Shaw came to complainant, and told him that John would like to have a receipt for the 30 days that complainant had promised him; that complainant gave him a receipt, and James paid $15 in behalf of John, took the receipt to the house, and delivered it to John's wife, who put it on a dish in the pantry. John admits that he saw it there. At the expiration of 30 days, complainant demanded possession of the premises, which the defendant refused, claiming that he had a life lease of the premises from his father. Such is the case made by the complainant's evidence. Defendant testified that at the solicitation of his father he moved into these premises in April, 1900, under a statement from his father that he would give him a life lease of the place; that such lease was made out, executed, and delivered, and afterwards returned to his father for safe keeping. His father admits drawing up a paper intended for a life lease to take effect at his death, but that it was never delivered, was retained by him, and subsequently destroyed. Defendant also denied the conversation with complainant, and disputed his father's testimony on some points.

The court instructed the jury that the controversy between defendant and his father as to the life lease was of no consequence in the case; that it was the duty of defendant, if inquiry was made by complainant, to tell him of any claim he had, if any, in the premises; that if defendant did inform complainant of his claim through the life lease, and complainant purchased after notice of that fact, he did so at his peril, and that title could not be determined in this summary proceeding. But if defendant and his wife made no claim, and "simply desired to have 30 days in which to move, and got a receipt for the rent in confirmation of that arrangement, then they have no rights in this case." Verdict and judgment for the complainant.

*Dalton, Mertz & Renaud* (*Arthur D. Maguire*, of counsel), for appellant.

*Julian G. Dickinson*, for appellee.

GRANT, J. (*after stating the facts*). The learned circuit judge was correct. The existence and validity of title by lease was not involved. Defendant had no title of record. His father was the owner in fee simple. His occupancy with his father was not notice of any claim of title or right in the son. Title and occupancy by the father implied that possession was that of the father rather than that of the son. The presumption would be that the son was living with the father under the father's possession, and not that the father was living with the son under the son's possession distinct from that of the father. Under the complainant's evidence that was the arrangement. The father was intending to leave immediately. The son desired a reasonable time in which to vacate. If defendant made that arrangement, and complainant bought and parted with his money under those circumstances, the defendant is not at liberty in this suit to set up in defense the lease with his father and possession under it. The jury found that complainant's version of the transaction was the true one, that defendant had recognized complainant's title as valid, had recognized him as his landlord, and that defendant's right of possession had terminated. The finding is conclusive of the case. The time for defendant to speak was when complainant asked him if he had any claim.

Judgment affirmed

BLAIR, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.

### ON MOTION FOR REHEARING.

PER CURIAM. In view of the application for a rehearing, we deem it proper to say that our opinion was not intended to deprive the defendant of any remedy by bill in

equity to enforce his alleged lease, or any other remedy he might deem it advisable to pursue. Mr. Nagelspach in his complaint based his right of action upon the relation of landlord and tenant. · The jury found that the relation existed. If it did exist the complainant was entitled to recover. If it did not, then he was not entitled to recover. With this explanation of our former opinion, the application for a rehearing is denied.